RIDENBAUGH (YOUNG v.).   See Case No. 18,173.

RIDEOUT v. HARTFORD.   See Cases Nos. 2,748 and 2,752.

RIDER (DENNIS v.).   See Case No. 3,797.

---

## Case No. 11,812.
### RIDER v. The PACIFIC. [2]

District Court, D. California.   Dec. 16, 1871.

COLLISION BETWEEN SAILING VESSELS—SCHOONER AT PIER.

[A schooner, hoisting sail to depart from her pier, perceived another schooner making rapidly for a dock near by. The former thereupon hauled down her jib and held on to the wharf, but as the other continued to approach, the jib was again hoisted and the bowline slacked off, and a collision ensued just as the other was dropping her mainsail and had come to a stop. Held, that the approaching schooner had a right to assume, from the dropping of the jib, that the other would wait until she came to anchor, and it appearing that, if this course had been followed, the collision would not have occurred, the schooner at the pier was solely in fault.]

[This was a libel by I. B. Rider and others against the Pacific, for damages for collision.]

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Not previously reported.]

A collision occurred on the 3d of November, 1870, between the schooners Pacific and Dreadnought, in the bay, at the foot of Market street, which resulted in an action for damages brought in the United States district court.

Milton Andros, for libelant.
Will Campbell, for claimant.

•HOFFMAN, District Judge. On the 3d of November, 1870, the schooner Dreadnought was lying at the end of Clay Street wharf, with all sails set, ready to start on her voyage. She was still attached to the wharf by a bowline, which the master was about to cast off, when he observed the Pacific, off Vallejo Street wharf, coming down with a strong flood tide and before a northwest wind, apparently heading for Clay or Market Street wharf. He thereupon held on to his fast and hauled down his jib, intending to give the Pacific an opportunity to come to an anchor. The latter vessel continued her course until, as the master of the Dreadnought asserts, she approached so near to the latter vessel as to render a collision imminent, if not inevitable, when he hoisted his jib and slacked off his bowline about 30 fathoms. The maneuver proved unsuccessful. The Dreadnought failed to clear the Pacific, the jibboom of the latter striking the Dreadnought's mainsail. No injury was done to the hull of the Dreadnought, the martingale or bobstay of the Pacific preventing any contact of the stem with the quarter of the other vessel.

It clearly appears that, previous to the collision, the Pacific had hauled down her jib, let go her anchor, and had rounded to, so as to head to the wind. At the moment of the collision she was hauling down her mainsail. This fact would seem to indicate that she must already have come into the wind. With an anchor let go and her jib hauled down, in a flood tide and a strong nor'wester, it is to be presumed that her head would have been brought to the wind and tide almost immediately. It is stated by the witnesses for the libelant, that the Pacific would have struck the Dreadnought had not the latter slackened her bowline. This appears to me demonstrably erroneous. The master of the Dreadnought states that he paid out about 30 fathoms of line. The wind and tide must have taken his vessel directly, or nearly directly, toward the Pacific. It is said that the latter was still forging ahead against wind and tide, and overrunning her chain. Admitting this to be true, though I think the fact is otherwise, the force of the collision was so slight, considering the disparity in the size of the vessel (the Pacific being 200 tons and the Dreadnought 20), as to prove that the Pacific must have been nearly stationary. It is at least quite clear that she would have become so before traversing the distance of 20 fathoms, which would have in-

tervened between her and the Dreadnought, had the latter remained at the wharf. The immediate cause of the collision was, therefore, the slacking off her line by the Dreadnought; and the only question in the case is whether the Pacific was in fault in not having sooner let go her anchor, and by omitting to do so, causing the Dreadnought to suppose a collision to be imminent, and that some necessity to avert it was demanded. The circumstance that the measures adopted by the Dreadnought were unnecessary, or, as the result proved, caused the accident, is no excuse to the Pacific if, by her own fault, she placed the other vessel in a situation of apparently imminent danger, requiring instant action to avert it. But it does not appear to me that, under the evidence, this fault can be attributed to the Pacific. She was bound to a wharf closely adjacent to that at which the Dreadnought was lying. When she saw the latter had hauled down her jib, she had a right to assume that her master intended to wait until she had come to an anchor. She knew that, by hauling down her own jib and letting go her anchor, she would come into the wind and arrest her progress in a very few moments, and the event proved her anticipation to be correct. She had no right to suppose that, while she was in the act of doing this, and had nearly or quite accomplished it, the Dreadnought, by slacking off her line, would attempt to cross her bows, with wind and tide carrying her down upon her.

These views are sustained by the evidence of the claimant's witnesses who observed the occurrence. They assert that, at the time of the collision, the Pacific was motionless, that she was heading to the wind and tide, and was riding to her anchor. Captain Goddall, who, however, was not in so good a position for observation, expressed the opinion that the Pacific was in fault. But he failed to notice, or was not in a position to see, that the Dreadnought materially changed her position by slacking off her line and setting her jib. He states that, from his nautical knowledge and observation of the occurrence, he thought the Pacific was to blame. "The vessel run into seemed to be stationary, and as the Pacific came up under strong headway, I could form no other conclusion." If the facts had been as supposed by the witness, his conclusions would have been just. Had he been aware that the collision was caused by the Dreadnought's not having remained stationary, and that the Pacific, in fact, brought up at a point nearly 30 fathoms distant from the position originally occupied by the other vessel, he would probably have found a different opinion.

I think, therefore, that the accident is to be attributed to the Dreadnought's not having remained at the wharf until the Pacific had come to an anchor, and to her attempt to cross the bows of the latter under circumstances not justifying the attempt, and in a state of the tide and wind which rendered this attempt dangerous and its success doubtful.

Libel dismissed.